NS:AS/KDE/DR
F.#2018R00551

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N D I C T M E N T |
| - against - | Cr. No. 1:20-cr-00415(ARR)(JO) |
| AKMAL ASADOV, <br> SAYUZ DAIBAGYA, <br> ▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮ <br> ANTON PEREVOZNIKOV, <br> SHOHRUH SAIDOV, <br>     also known as "Shoma" and <br>     "Sean," <br> MARAT SHADKHIN, <br>     also known as "Mark," and <br> KIRILL SOKHONCHUK, | (T. 13, U.S.C., §§ 305(a)(1) and 305(a)(3); T. 18, U.S.C., §§ 371, 554(a), 981(a)(1)(C), 2314, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c)) |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.   Export Regulations

1.   The Secretary of Commerce had the authority to collect information from persons exporting goods from the United States. 13 U.S.C. §§ 301 et seq. The Foreign Trade Regulations ("FTR") authorized the Secretary of Commerce, with the concurrence of the Secretary of State and the Secretary of Homeland Security, to publish regulations mandating that all persons engaged in the export of commodities file information

regarding exports via the Automated Export System ("AES") for all shipments where a Shipper's Export Declaration ("SED") was previously required. 15 C.F.R. § 30.1. AES was the electronic system for collecting information from persons exporting goods from the United States.

2. The FTR further authorized the Secretary of Commerce to issue regulations regarding the imposition of civil and criminal penalties for violations of these regulations. 15 C.F.R. § 30.1(a). The FTR declared that electronic filing through the AES strengthens the U.S. government's ability to prevent the export of certain items to unauthorized destinations and end users, because the AES aids in targeting, identifying and, when necessary, confiscating suspicious or illegal shipments prior to exportation. 15 C.F.R. § 30.1(b).

3. In addition, with respect to commodities shipped under a single commodity designation code with a value of more than $2,500, the FTR provided that an Electronic Export Information ("EEI") must be filed through the AES by, among others, the United States Principal Party In Interest ("USPPI") for all exports of physical goods. 15 C.F.R. §§ 30.2(a)(1), 30.37(a). The USPPI or its authorized agent had the responsibility to submit complete, correct information in AES based on personal knowledge of the facts or on information furnished by the parties to the export transaction. 15 C.F.R. §§ 30.3, 30.9.

COUNT ONE
(Conspiracy to Fail to File Export Information, Smuggle Electronic Devices
and Defraud the United States)

4. The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

5.      In or about and between January 2018 and September 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKMAL ASADOV, SAYUZ DAIBAGYA, ███████████████ ███████ ANTON PEREVOZNIKOV, SHOHRUH SAIDOV, also known as "Shoma" and "Sean," MARAT SHADKHIN, also known as "Mark," and KIRILL SOKHONCHUK, together with others, did knowingly and willfully conspire (a) to fail to file export information through the AES, contrary to Title 13, United States Code, Section 305(a)(1); (b) to fraudulently export and send from the United States merchandise, articles and objects, to wit: electronic devices, contrary to one or more laws and regulations of the United States, to wit: Title 13, United States Code, Section 305(a)(1) and Title 15, Code of Federal Regulations, Part 30, and receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to have been intended for exportation contrary to said laws and regulations of the United States, all contrary to Title 18, United States Code, Section 554(a); and (c) to defraud the United States by impeding, impairing, obstructing and defeating the lawful governmental functions of the United States Department of Commerce, in the collection of export information through the AES.

6.      In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ASADOV, DAIBAGYA, ████████████████ PEREVOZNIKOV, SAIDOV, SHADKHIN and SOKHONCHUK, together with others, did commit and cause the commission of, among others, the following:

## OVERT ACTS

(a) On or about May 25, 2019, DAIBAGYA flew out of the United States from John F. Kennedy International Airport in Queens, New York ("JFK") with approximately $60,000 worth of electronic devices in his luggage without having filed the required export information through the AES.

(b) On or about June 2, 2019, ▇▇▇▇▇▇ flew out of the United States from JFK with approximately $195,000 worth of electronic devices in his luggage without having filed the required export information through the AES.

(c) On or about June 11, 2019, ▇▇▇▇▇▇ flew out of the United States from JFK with approximately $86,000 worth of electronic devices in his luggage without having filed the required export information through the AES.

(d) On or about June 17, 2019, SHADKHIN drove ▇▇▇▇▇▇ from JFK to a hotel in Queens, New York.

(e) On or about June 17, 2019, SAIDOV, SOKHONCHUK and SHADKHIN transported electronic devices to be smuggled out of the United States by ▇▇▇▇▇▇.

(f) On or about June 18, 2019, ▇▇▇▇▇▇ flew out of the United States from JFK with approximately $218,905 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

(g) On or about July 18, 2019, ▇▇▇▇▇▇ flew from Russia to JFK.

   (h) On or about July 19, 2019, SHADKHIN and SOKHONCHUK, together with others, supplied ▮▮▮ with electronic devices to be smuggled out of the United States.

   (i) On or about July 19, 2019, ▮▮▮ flew out of the United States from JFK with approximately $220,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

   (j) On or about August 6, 2019, DAIBAGYA flew out of the United States from JFK with approximately $149,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

   (k) On or about August 19, 2019, SHADKHIN supplied ▮▮▮ with electronic devices in Queens, New York.

   (l) On or about August 19, 2019, ▮▮▮ flew out of the United States from JFK with approximately $134,269 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

   (m) On or about October 5, 2019, SAIDOV checked into a flight at JFK to travel to Russia with a stop in France. In SAIDOV's checked luggage was approximately $250,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, without having filed the required export information through the AES.

(n) On or about October 17, 2019, PEREVOZNIKOV purchased five electronic devices that were represented to be stolen to be smuggled out of the United States.

(o) On or about October 18, 2019, DAIBAGYA flew out of the United States from JFK with a co-conspirator ("CC-1"), an individual whose identity is known to the Grand Jury. DAIBAGYA and CC-1 traveled with a total of approximately $137,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in their luggage without having filed the required export information through the AES.

(p) On or about November 21, 2019, ASADOV possessed in a storage locker in Long Beach, New York, approximately 319 electronic devices (the "November 21 Devices"), including devices stolen and/or acquired by fraudulent means, and fraudulent receipts that falsely indicated the devices had been purchased from a store.

(q) On or about November 22, 2019, seven travelers flew out of the United States from JFK with a total of approximately $43,000 worth of electronic devices, including some of the November 21 Devices and other devices stolen and/or acquired by fraudulent means, in their luggage without having filed the required export information through the AES.

(r) On or about November 23, 2019, DAIBAGYA sent electronic messages to PEREVOZNIKOV, including, in Russian, "How am I going to give it to go on the flight?" and "I will be here and I will load it for the flight," to which PEREVOZNIKOV responded, in Russian, "Listen you said you're flying out and will bring everything yourself."

(s)     On or about November 27, 2019, DAIBAGYA flew out of the United States from JFK with a co-conspirator ("CC-2"), an individual whose identity is known to the Grand Jury. DAIBAGYA and CC-2 traveled with a total of approximately $285,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in their luggage without having filed the required export information through the AES.

(t)     On or about December 12, 2019, PEREVOZNIKOV sent electronic messages to DAIBAGYA, including, in Russian, "What time," "Who is going to take everything," and "How," to which DAIBAGYA responded, in Russian, "At the airport" and "I'll take it."

(u)     On or about December 13, 2019, DAIBAGYA sent an electronic message to PEREVOZNIKOV that said, in Russian, "What did you put in the suitcase?", to which PEREVOZNIKOV responded, "16 iPads," "Seven Macbooks," and "17 iPhones."

(v)     On or about December 20, 2019, DAIBAGYA flew out of the United States from JFK with CC-1. DAIBAGYA and CC-1 traveled with a total of approximately $302,789 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in their luggage without having filed the required export information through the AES.

(w)     On or about January 20, 2020, DAIBAGYA purchased five electronic devices (the "January 20 Devices") that were represented to be stolen to be smuggled out of the United States.

(x) On or about January 25, 2020, ▓▓▓▓ flew out of the United States from JFK using a ticket purchased by DAIBAGYA with approximately $103,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

(y) On or about February 19, 2020, ▓▓▓▓ purchased ten electronic devices that were represented to be stolen (the "February 19 Devices") to be smuggled out of the United States.

(z) On or about February 19, 2020, a traveler arrived at JFK on a flight from Russia, using a ticket purchased by DAIBAGYA. On or about February 19, 2020, the traveler flew out of the United States from JFK, using a ticket purchased by DAIBAGYA, with approximately $125,700 worth of electronic devices, including the February 19 Devices, in his luggage without having filed the required export information through the AES.

(aa) On or about July 9, 2020, DAIBAGYA flew out of the United States from JFK with CC-1. DAIBAGYA and CC-1 traveled with a total of approximately $8,100 worth of electronic devices in their luggage without having filed the required export information through the AES.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

### COUNT TWO
(Illegal Exportation of Electronic Devices)

7. The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

8. In or about and between January 2018 and September 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKMAL ASADOV, SAYUZ DAIBAGYA, ███████████ ███████ ANTON PEREVOZNIKOV, SHOHRUH SAIDOV, also known as "Shoma" and "Sean," MARAT SHADKHIN, also known as "Mark," and KIRILL SOKHONCHUK, together with others, did knowingly, intentionally and fraudulently export and send from the United States, and attempt to export and send from the United States, merchandise, articles and objects, to wit: electronic devices, contrary to one or more laws and regulations of the United States, to wit: Title 13, United States Code, Section 305(a)(1) and Title 15, Code of Federal Regulations, Part 30, and receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to have been intended for exportation contrary to said laws and regulations of the United States.

(Title 18, United States Code, Sections 554(a), 2 and 3551 et seq.)

### COUNTS THREE THROUGH SIXTEEN
(Failure to File Export Information)

9. The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

10. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants set forth below, together with others, did knowingly and intentionally fail to file export information through the AES relating to

international transportation of electronic devices that had a value of more than $2,500 from the United States to a foreign country:

| COUNT | APPROXIMATE DATE | DEFENDANT(S) |
|---|---|---|
| THREE | May 25, 2019 | DAIBAGYA |
| ■ | ■ | ■ |
| ■ | ■ | ■ |
| SIX | June 18, 2019 | ■ SAIDOV, SOKHONCHUK |
| SEVEN | July 19, 2019 | DAIBAGYA, ■ SHADKHIN, SOKHONCHUK |
| EIGHT | August 6, 2019 | DAIBAGYA |
| NINE | August 19, 2019 | ■ SHADKHIN |
| TEN | October 18, 2019 | DAIBAGYA |
| ELEVEN | November 22, 2019 | ASADOV |
| TWELVE | November 27, 2019 | DAIBAGYA, PEREVOZNIKOV |
| THIRTEEN | December 20, 2019 | DAIBAGYA, PEREVOZNIKOV |
| ■ | ■ | ■ |
| FIFTEEN | February 19, 2020 | DAIBAGYA, ■ |
| SIXTEEN | July 9, 2020 | DAIBAGYA |

(Title 13, United States Code, Section 305(a)(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT SEVENTEEN
(Conspiracy to Transport Stolen Property)

11. The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

12. In or about and between January 2018 and September 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKMAL ASADOV, SAYUZ DAIBAGYA, ▇ and ANTON PEREVOZNIKOV, together with others, did knowingly and intentionally conspire to transport in interstate and foreign commerce goods, wares and merchandise valued at $5,000 or more, to wit: electronic devices, knowing the same to have been stolen, converted and taken by fraud, contrary to Title 18, United States Code, Section 2314.

13. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants ASADOV, DAIBAGYA, ▇ and PEREVOZNIKOV, together with others, did commit and cause the commission of, among others, the following:

### OVERT ACTS

(a) On or about June 18, 2019, ▇ flew out of the United States from JFK with approximately $218,905 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

(b) On or about July 19, 2019, ▇ flew out of the United States from JFK with approximately $220,000 worth of electronic devices, including

12

devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

(c) On or about August 6, 2019, DAIBAGYA flew out of the United States from JFK with approximately $149,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES

(d) On or about August 19, 2019, ▮▮▮▮▮▮ flew out of the United States from JFK with approximately $134,269 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

(e) On or about October 17, 2019, PEREVOZNIKOV purchased five electronic devices that were represented to be stolen to be smuggled out of the United States.

(f) On or about October 18, 2019, DAIBAGYA flew out of the United States from JFK with CC-1. DAIBAGYA and CC-1 traveled with a total of approximately $137,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in their luggage without having filed the required export information through the AES.

(g) On or about November 21, 2019, ASADOV possessed in a storage locker in Long Beach, New York the November 21 Devices, including devices stolen and/or acquired by fraudulent means, and fraudulent receipts that falsely indicated the devices had been purchased from a store.

(h) On or about November 22, 2019, seven travelers flew out of the United States from JFK with a total of approximately $43,000 worth of electronic devices, including some of the November 21 Devices and other devices stolen and/or acquired by fraudulent means, in their luggage without having filed the required export information through the AES.

(i) On or about November 27, 2019, DAIBAGYA flew out of the United States from JFK with CC-2. DAIBAGYA and CC-2 traveled with a total of approximately $285,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in their luggage without having filed the required export information through the AES.

(j) On or about December 20, 2019, DAIBAGYA flew out of the United States from JFK with CC-1. DAIBAGYA and CC-1 traveled with a total of approximately $302,789 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in their luggage without having filed the required export information through the AES.

(k) On or about January 20, 2020, DAIBAGYA purchased the January 20 Devices, which were represented to be stolen, to be smuggled out of the United States.

(l) On or about January 25, 2020, ▆▆▆▆▆ flew out of the United States from JFK using a ticket purchased by DAIBAGYA with approximately $103,000 worth of electronic devices, including devices stolen and/or acquired by fraudulent means, in his luggage without having filed the required export information through the AES.

(m) On or about February 19, 2020, ███ purchased the February 19 Devices, which were represented to be stolen, to be smuggled out of the United States.

(n) On or about February 19, 2020, a traveler arrived at JFK on a flight from Russia using a ticket purchased by DAIBAGYA. On or about February 19, 2020, the traveler flew out of the United States from JFK using a ticket purchased by DAIBAGYA with approximately $125,700 worth of electronic devices, including the February 19 Devices, in his luggage without having filed the required export information through the AES.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT EIGHTEEN
(Transportation of Stolen Property)

14. The allegations contained in paragraphs one through three are realleged and incorporated as if fully set forth in this paragraph.

15. In or about and between January 2018 and September 2020, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants AKMAL ASADOV, SAYUZ DAIBAGYA, ███ and ANTON PEREVOZNIKOV, together with others, did knowingly and intentionally transport in interstate and foreign commerce certain goods, wares and merchandise valued at $5,000 or more, to wit: electronic devices, knowing the same to have been stolen, converted and taken by fraud.

(Title 18, United States Code, Sections 2314, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE, TWO, SEVENTEEN AND EIGHTEEN

16.  The United States hereby gives notice to the defendants charged in Counts One, Two, Seventeen and Eighteen that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of any such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

17.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THREE THROUGH SIXTEEN

18. The United States hereby gives notice to the defendants charged in Counts Three through Sixteen that, upon their conviction of any such offenses, the government will seek forfeiture in accordance with Title 13, United States Code, Section 305(a)(3), which requires any person convicted of such offenses to forfeit: (a) any of that person's interest in, security of, claim against, or property or contractual rights of any kind in the goods or tangible items that were the subject of the violations; (b) any of that person's interest in, security of, claim against, or property or contractual rights of any kind in tangible property that was used in the export or attempt to export that was the subject of the violations; and (c) any of that person's property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the violations.

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

17

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 13, United States Code, Section 305(a)(3); Title 21, United States Code, Section 853(p))

A TRUE BILL

/s/ Jeanine Turner
FOREPERSON

/s/ Seth D. DuCharme
SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#2018R01351

FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*AKMAL ASADOV, et al.*

Defendants.

# INDICTMENT

(T. 13, U.S.C., §§ 305(a)(1), 305(a)(3); T. 18, U.S.C., §§ 371, 554(a), 981(a)(1)(C), 2314, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____ /s/ Foreperson

Filed in open court this _____ day,

of _____ A.D. 20 _____

Clerk

Bail, $ _____

*Andrey Spektor, Keith D. Edelman, Dana Rehnquist,*
*Assistant U.S. Attorneys (718) 254-7000*