**ALBERT Y. DAYAN** *80-02 Kew Gardens Rd., # 902, Kew Gardens, N.Y. 11415*

*Attorney at Law* *Tel: (718) 268-9400: Fax: (718) 268-9404*

August 1, 2022

The Honorable Allyne R. Ross
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Shohruh Saidov
20-CR-00415-006(ARR)

Dear Judge Ross:

This Sentencing Memorandum is submitted in a letterform in connection with the upcoming sentencing of Mr. Saidov.

Pursuant to Fed. R. Crim. P. 32(i)(3) and 18 U.S.C. § 3553(a), SHOHRUH SAIDOV respectfully submits to this Honorable Court for consideration, relevant information for determination of sentence that is no greater than necessary to achieve the goals of sentencing under § 3553(a)(2). In support, the Defendant states as follows:

As an initial matter, the Defendant pleaded guilty before this Honorable Court on December 3, 2021 to Count 1 - Conspiracy to Fail to File Export Information, Smuggle Electronic Devices, and Defraud the United States and Count 6 - Failure to File Export Information through the AES relating to international transportation. We agree with the PSR's sentencing calculation, except for the suggested 3 level adjustment for Mr. Saidov's alleged role in the offense. If this Honorable Court should agree with Defendant's position on the subject of his role, the total offense

level, as apposed to the one promulgated by the PSR at level 14 (15-21 months), is level 11 (Zone B 8-14 months).

We respectfully submit that in keeping with the sentencing mandate under 18 U.S.C. Sec. 3553(a), mitigating factors exist in this case demonstrating that a sentence below the stipulated Guideline calculation and U.S. Probation recommendation is warranted. The undersigned as counsel for Mr. Saidov submits that, in light of the decisions issued in cases such as United States v. Booker, 125 S.Ct. 738 (2005) and Kimbrough v. United States, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007), this Court is free to issue a sentence in compliance with 18 U.S.C. § 3553 that is fair based upon the specific facts of this case. In considering the appropriate sentence for Mr. Saidov in this case, we respectfully ask this Honorable Court to consider the vast educational and cultural differences from where Mr. Saidov and his family immigrated – city of Samarkand country of Uzbekistan—to the sophisticated international trade laws and regulations of the most advanced country in the history of the world—United Sates of America. To this day, the city and village where Mr. Saidov was born, raised and educated has donkeys pulling wagons on the same streets as cars drive. Retailers are still selling loafs of breads and other produce sitting literally on the streets with their merchandise laid out on the ground. Most homes still use outside small wooden steamy hot from the sun sheds with a whole in the ground for their lavatory. And, the marriages are still mostly arranged.

Notwithstanding that Mr. Saidov is a very devout, polite and humble, he is uneducated, can hardly formulate his ideas in words and is extremely immature in cultivation and is disorganized.

In an arranged marriage, in 2013, Mr. Saidov married his wife, Shakhzoba (Mansurova) Saidov (age 28) in Uzbekistan. The couple shares three children, all of whom reside in a one-bedroom apartment with one bathroom. The defendant's wife, Shakhzoba Saidov, was contacted via telephone by the probation officer with the assistance of a Russian interpreter. She recalled

having been in a state of "shock" when the defendant was arrested for the instant offense, as she was not aware the defendant was engaged in any criminal activity. Nevertheless, she maintains her support of him and described him as being a "very good" husband and father. Mrs. Saidov also described the defendant as a very generous person who would "do anything" for his family. Mrs. Saidov explained that if her husband is incarcerated for the instant offense and deported to Uzbekistan, the possibility of which she was informed by counsel, she is uncertain how she will maintain their household and will likely need to return to Uzbekistan with their three children. Mrs. Saidov expressed a belief that the defendant "made a mistake" and is hopeful that Your Honor will give him a second chance so he can be present for their family.

I respectfully submit to this Honorable Court, that a young man raised on the streets of Samarkand, where everyday business and trade decisions are made on a fly with no thought for governmental regulations, as apposed to a US man who through education, news coverage and societal upbringing is expected to instinctively know the serious consequences for avoiding certain governmental reporting requirements, should not necessarily be punished for his actions with incarceration and deportation. I respectfully suggest that Mr. Saidov should be required to be educated and trained through different requirements imposed by the department of probation for the next 60 moths of his life about the American way of life.

Of course, Mr. Saidov knew that what he was doing was against the law at the time of the instant offense. But, back from where he immigrated and lived the vast majority of his life, his present conduct was considered ordinary course of daily business and was not considered as so morally wrong. Although Mr. Saidov understood that what he was doing was against the law, he believed then that it was not so terribly wrong because the phones were all lawfully purchased and sold with no theft involved. Simply put, he comes from a historical culture of buying, selling and brokering items at a profit with little or no awareness and/or concern for infringement of

governmental policies and regulations. Mr. Saidov's arrest in Brooklyn immediately resulted in Adjournment in Contemplation of a Dismissal (ACD). Unbeknownst to him, Saidov was driving in a vehicle with temporary plates and registration that he lawfully purchased from a dealer, that turned out to be phony. The incident is another example of his foolishness.

Of course, now he knows how dreadfully wrong his reasoning was in the US. Mr. Saidov never imagined that his involvement of sending phones overseas, many of which transactions were conducted openly with no efforts to conceal at the airports, was putting his entire family and himself at serious risk of prison and deportation. If Mr. Saidov believed then, that his actions could even remotely lead to prosecution in Federal Court and face the possibility of incarceration, he would never take that chance. It was not worth it. He now understands the seriousness of the fraud he was involved in. Unfortunately for him, not in time and at a great cost to him and his family. The fateful lesson in this case for Mr. Saidov of arrest, prosecution and conviction has caused an otherwise a good hard working family-man much grief and pain.

Mr. Saidov is remorseful, regretful and contrite. He prays only for a chance to return to his family after the day of sentencing so that his children would not even miss him for a day. He would never take a chance to be incarcerated away from his loved ones for even one day if he imagined that it would be possible due to his involvement with Mr. Daibagya and the shipment of the phones. Notwithstanding that during the course of the conspiracy, Mr. Saidov had passed but only a few messages from Mr. Daibagya to others in the conspiracy about what their duties should entail for a few shipments, like other co conspirators did on other occasions when they passed information from Daibagya to Saidov, Mr. Saidov was no manager or supervisor by any stretch of imagination in this conspiracy.

Mr. Saidov has made an attempt, as much as possible at this juncture, to show his remorse and acceptance of responsibility to our society by waiving many of his substantive rights, admitting

his conduct and pleading guilty to his involvement in the offense. These actions have assisted the government and the judiciary in facilitating the administration of justice. With proper probationary supervision and guidance he will satisfy all conditions set by Your Honor and should never be involved in improper conduct of any kind in the future. He recognizes that his offense was serious. He acknowledges that his conduct was in violation of this country's criminal and civil laws.

As this Court is aware, in United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. Therefore, the appropriate remedial measure was to declare the Guidelines merely advisory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). After Booker, federal sentencing is vastly different. Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one of many factors in determining a sentence no greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. § 3553(a)(2). In Nelson v. United States, 129 S.Ct. 890 (2009/0, the Supreme Court reemphasized that the guidelines are both advisory and not to be presumed reasonable. Mr. Saidov completely accepts responsibility for his conduct in this case. He has matured in the ways of our country and now appreciates the ways our country is challenged to regulate the free and honest flow of commerce. Even when the Guidelines were mandatory, post-offense rehabilitation was a permissible ground for a downward departure. United States v. Garcia, 926 F.2d 125 (2nd Cir. 1991); United States v. Rudolph, 190 F.3d 720, 722-23 (6th Cir 1999); United States v. Fagan, 162 F.3d 1280, 1284-85 (10th Cir. 1998;. After the Guidelines were made advisory, this conduct becomes even more important at sentencing.

We ask the Court, under U.S.S.G. § 5H1.6, to look to such factors as whether incarceration of a defendant will cause a "substantial, direct, and specific loss to of essential caretaking" in deciding whether family responsibilities warrant a departure.

In this case, incarcerating Mr. Saidov will almost guarantee his removal from this country with his children and will create a situation where an otherwise great American family in the making with three children will be compelled to go back to life in Samarkand. The reasonable father is expected to have thought of such a consequence prior to engaging in unlawful activities. But, as has been discussed above, Mr. Saidov needs to be informed and educated about what our society expect of reasonable man conducting business in the United Sates and the severe consequences for violating reporting requirements; not through custodial punishment, where innocent family members stand to suffer for the rest of their lives by going back to Samarkand, but through supervision and counseling.

In *Gull, the* Supreme Court upheld a sentence of probation imposed on a defendant facing an advisory guidelines range of 30 to 37 months imprisonment. In so finding, the Supreme Court explained that "probation is not granted out of a spirit of leniency…[and] is not merely letting an offender of easily….[P]robation…conditions imposed on an individual can have a significant impact on both that person and society…" Gall, 128 S.Ct. at 596, n4 (internal citations and quotation marks omitted). Indeed, The Supreme Court noted that probation is a substantial punishment. "Offenders on probation are nonetheless subjected to several standard conditions that substantially restrict their liberty,". In this case, Saidov's conviction and probationary sentence will restrict his liberties for at least 60 months of his life. This conviction and its sentence, if probation, will be a life long imposition of hardship on Mr. Saidov. His employment options, here in the United States, and licenses and permits he may need for work will be limited. In his case, probation is not simply a lenient option because of strict and time

consuming requirements of being supervised and reporting to probation. He is a first time and last time offender and he will carry the heavy burden of this federal felony conviction for the rest of his life in the United States. If he travels out side this country for any reason, including the urge to visit his parents in Samarkand, he may not be permitted to reinter based on this felony conviction. It is respectfully submitted, that release on probation under these conditions designed will effectively satisfy the appropriate specific and general deterrent of similarly situated individuals.

We submit that the Guideline range and the recommendation of the Department of Probation in this case is greater than necessary, to achieve the goals of sentencing under 18 U.S.C. § 3553(a). Accordingly, the Defendant respectfully requests that this Court take into consideration the above factors and sentence Mr. Saidov to 60 months of probation with other conditions that seem just and proper to this Honorable Court and are sufficient to achieve the goals of sentencing under § 3553(a)(2).

Respectfully submitted,

________/s/________________

Albert Dayan, Esq.
Attorney for the Defendant
80-02 Kew Gardens Road, Suite 902
Kew Gardens, New York 11415
dayanlaw@aol.com